# EXHIBIT A

E-FILED
4/14/2023 2:03 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
23CV414678
Reviewed By: P. Newton

Lori J. Costanzo, SBN 142633
Ruby Palomares, SBN 343745
COSTANZO LAW FIRM
111 West St. John, #700
San Jose, CA 95113
Phone:    408.993.8493
Fax:       408.993.8496
Email:    Lori@costanzo-law.com
Ruby.palomares@costanzo-law.com

Attorneys for Plaintiffs
Luis Rascon

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF SANTA CLARA - UNLIMITED JURISDICTION

| | |
|---|---|
| LUIS RASCON, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>ALTRA INDUSTRIAL MOTION CORP. dba THOMSON LINEAR, LLC., a California corporation, and DOES 1–25, inclusive,,<br><br>    Defendants. | 23CV414678<br>Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR:**<br>1. **Race Discrimination in Violation of California Government Code § 12940(a)**<br>2. **Failure to Take Steps to Prevent Discrimination in Violation of California Government Code § 12940(k)**<br>3. **Wrongful Termination in Violation of Public Policy**<br>4. **Retaliation in Violation of California Government § 12940(h)**<br>5. **Intentional Infliction of Emotional Distress**<br>6. **Failure to Provide Complete Personnel File in Violation of Labor Code § 1198.5**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff LUIS RASCON allege against Defendants, and each of them, as follows:

## I. NATURE OF THE ACTION

1. This is an employee complaint against the Plaintiffs' former employer for violations of the California Fair Employment and Housing Act ("FEHA"), retaliation in violation of public policy, wrongful termination, and intentional infliction of emotional distress.

## II. PARTIES

2. Plaintiff LUIS RASCON ("RASCON" or "PLAINTIFF") is a Latino male resident of the State of California. At all relevant times, Plaintiff was employed by Defendant ALTRA INDUSTRIAL MOTION CORP. dba THOMSON LINEAR, LLC., ("THOMSON") and Does 1 through 25 (jointly referred to as "Defendants") in Santa Clara County, California.

3. Defendant ALTRA INDUSTRIAL MOTION CORP. dba THOMSON LINEAR, LLC is and was at all material times a Delaware corporation registered to do business in the State of California, including but not limited to conducting business within Santa Clara County.

4. Defendant THOMSON is and was at all material times an "employer," as that term is defined in the California Fair Employment and Housing Act, and under the California Labor Code.

5. The Defendants identified as Does 1 through 25, inclusive, are sued under fictitious names, and were, at all times herein-mentioned, agents, business affiliates, successors- and/or predecessors-in-interest, officers, directors, partners, and/or managing agents of some or each of the remaining defendants. Their true names and capacities are unknown to Plaintiffs. Plaintiffs are informed and believe and, on that basis, allege that, at all times herein mentioned, each of the defendants identified as Does 1 through 25, inclusive, employed, and/or exercised control over the conditions of Plaintiffs which led to the instant lawsuit, and which are described herein. In doing the acts herein alleged, each Defendant is liable and responsible to Plaintiffs for the acts of every other Defendant. The true names and capacities of the Doe Defendants, whether individual, corporate, associate, or otherwise, are unknown to Plaintiffs who therefore sue such Doe Defendants by fictitious names pursuant to California Code of Civil Procedure section 474. Plaintiffs are informed and believe that the Doe Defendants are residents of the State of California. Plaintiffs will amend this complaint to show such Doe Defendants' true names and capacities when they are known.

6. Plaintiffs are informed and believe and thereon allege that, unless otherwise indicated, each Defendant was the agent and/or employee of every other Defendant within the course and scope of said agency and/or employment, with the knowledge and/or consent of said Defendant. Plaintiffs therefore allege upon information and belief that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged, and that Plaintiffs' damages alleged were proximately caused by each of those Defendants.

7. To the extent any allegation contradicts another allegation, they are to be construed as "alternative" theories.

## JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court because each Defendant transacts business within this County, and Plaintiffs performed work for Defendants and experienced the legal violations that are the subject of this Complaint in Santa Clara County. The monetary value of Plaintiffs' claims exceeds $25,000, and the amount in controversy exceeds the jurisdictional minimum of this Court.

9. Venue is proper in this Court. Plaintiff, at all relevant times, was a resident of Santa Clara County when he entered into his employment agreement with Defendants, and Santa Clara County is also where he performed the work of his employment agreement and relationship. Each Defendant is also an entity which conducts business in Santa Clara County, and Defendants entered into the employment contract with Plaintiffs in Santa Clara County, where the contract was to be performed. Plaintiffs allege on information and belief that one or more of Does 1–25 were and are at all material times either individuals residing and/or working in Santa Clara County or entities with their principal place of business and doing business in the Santa Clara County. Moreover, the acts and omissions complained of occurred in, and the damages, and injury that forms the basis of this lawsuit were sustained in Santa Clara County.

## EXHAUSTION OF ADMINITRATIVE REMEDIES

10. Defendants regularly and systematically do business in the State of California and are subject to suit under the Fair Employment and Housing Act ("FEHA") in that Defendants regularly employ five or more persons. Plaintiffs timely filed charges of discrimination, failure to investigate discrimination, retaliation, and wrongful termination against Defendants with the California Department of Fair Employment and Housing ("DFEH"). On March 21, 2023, Mr. Rascon received

a notice of the right to sue from the DFEH pursuant to California Government Code section 12965(b). Plaintiffs filed this action within one year of the date of their DFEH right-to-sue letters; therefore, administrative remedies have been properly exhausted.

11. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

12. The California Workers' Compensation Act does not preempt this action because Defendants' unlawful practices, as alleged herein, are not risks or conditions of employment. Plaintiffs are not required to satisfy any further private, administrative, or judicial prerequisites to the institution of this action, insofar as such prerequisites pertain to any of the remaining causes of action in this complaint.

**GENERAL ALLEGATIONS**

13. Mr. Rascon is a 36-year-old Latino male with over 14 years of experience in manufacturing and over 5 years serving in a supervisory capacity. In or around March or April 2022, Lorenzo Gonzalez, Operations Manager for Thomson Linear reached out to Mr. Rascon via Indeed. At the time, Mr. Rascon was not actively pursuing new job opportunities but agreed to discuss a potential job as a Production Supervisor. Mr. Gonzalez expressed his interest in Mr. Rascon based on his experience and qualifications and offered him the position with a starting pay of $30/hour. Mr. Rascon respectfully declined the position given his satisfaction with his employer, Expedite. Mr. Gonzalez insisted Mr. Rascon would be a great fit for Thomson Linear and offered him the position with an increased starting pay of $48/hour with the opportunity for overtime. As the primary source of income for his family, Mr. Rascon's decision to leave his position with Expedite required serious thought. After much deliberation and believing Thomson Linear would be a good job opportunity, Mr. Rascon agreed to accept the position. At no time during the hiring process was Mr. Rascon warned about the owners' propensity to abuse and mistreat persons of Hispanic descent.

14. Mr. Rascon was thus hired by Thomson Linear in April 2022 as a Production Supervisor. In his role, he was expected to oversee the production floor and manage machinists and ensure production was running smoothly. Immediately upon joining, Mr. Gonzalez warned Mr. Rascon to expect push back from Quang Ha ("Ha") who would be training him. Rascon did not

understand why as a new hire he would be facing any hostility and why leadership would consciously allow it. Nonetheless, Rascon remained eager to join the company.

### A. Racial Animosity Within Thomson Linear.

15. Unfortunately, after a few days of beginning his employment, Rascon approached Ha's work area when Ha verbalized his clear dislike of Rascon and stated "I don't like anyone in this area. I don't like Mexicans. Get your stuff and go to another area." Initially, Rascon assumed this was a poorly made joke. However, it quickly became apparent Ha was serious.

16. Following the uncomfortable encounter with Ha, Rascon disclosed what had just transpired to his coworker and Machinist, Robert. Robert explained how Ha had told him that he did not like that Mr. Gonzalez had begun hiring Latinos because he would say they "weren't smart enough" and "were stealing jobs."

17. After learning how Ha viewed Latino's, Rascon began to notice the racial animosity towards Latinos throughout the company and the need for diversity within the production floor. For instance, out of approximately 40 employees, only about 4 or 5 were Hispanic/Latino, meanwhile the majority were of Asian descent.

18. Further, within the men's restrooms there were drawings on the stalls of stick figures with sombreros depicted with penises in their mouths. Mr. Rascon was uncomfortable with these insulting and offensive images. On or around May 16, 2022, Rascon emailed Mr. Gonzalez, as well as Robert, Operations Manager, and Jennifer, Safety Manager, informing them of their existence and also complaining about Ha's comments. Instead of responding to Rascon's email and reassuring him that racial animosity would not be tolerated, Mr. Gonzalez approached Mr. Rascon and simply stated there was nothing he could do and "that's just how he is. Wait until he's gone."

19. Further, on one occasion Ha began cursing at Rascon and made racial slurs. Ha stated something along the lines of "f****n Mexicans" and "you and your f***n people." Once again, Rascon reported this to Mr. Gonzalez who again reiterated that Rascon needed "suck it up" until Ha transferred roles.

///

**B. Ha's Verbal Assaults Escalate and Rascon is Constructively Terminated.**

20. In his role, Mr. Rascon was required to oversee machinists, including Ha's brother, and ensure all employees were complying with company rules and procedures as well as with state and federal laws. On June 8, 2022, Rascon informed Ha's brother that he needed to take proper rest breaks. It became obvious that this incident was shared among the Ha brothers when Quang Ha approached Rascon the following day. Ha got in Rascon's face, nose-to-nose, and began berating and verbally assaulting him and calling him a "f****n wetback." Shortly thereafter, Emmanuel Ramirez approached Mr. Rascon to ask if something was wrong after having witnessed and overheard Ha's assault. Feeling confused, threatened and in fear of imminent harm given Ha's continued confrontations which appeared to be escalating. Mr. Rascon told Mr. Ramirez not to worry about it and reached out to Mr. Gonzalez who was out of the office at the time of the incident. In response to this, Mr. Gonzalez told Rascon to go home, to take the following day off (Friday, June 10, 2022), and that they would have a call on Monday, June 12, 2022. Rascon acquiesced and went home.

21. However, after not hearing back from Mr. Gonzalez for a few days, Rascon called Mr. Gonzalez on Wednesday, June 15, 2022. True to form, Mr. Gonzalez shrugged off Rascon's concerns and informed him there was nothing he could do, and if he didn't think he was a good fit for the company, then Rascon could leave, or he could keep waiting until Ha finally left.

22. Rightfully frustrated, Rascon decided to email someone outside of the Fremont location and in corporate human resources in hopes of obtaining unbiased and neutral assistance. Thus, on June 16, 2022, he emailed Annette Hildreth, Director Human Resources. However, Ms. Hildreth was out of office and Nicole Chelbian, Human Resources, reached out to schedule a call to discuss Mr. Rascon's concerns. In preparation for the call with Ms. Chelbian, Rascon emailed her a brief summary with some of his more recent concerns. During their subsequent phone call, Ms. Chelbian instructed him to take the following week off - a leave that would be unpaid.

23. On or about June 21, 2022, Ms. Chelbian notified Mr. Rascon via email that he could return to work. Mr. Rascon replied he was ready to return to work and asked what actions had been taken in order to ensure a safe and nontoxic work environment. Instead of providing an answer, Ms.

Chelbian scheduled a call with Mr. Rascon. However, Mr. Rascon informed her he would try to answer the call, but he faced poor signal which might interfere with connectivity. [See Exhibit 1].

24. Ultimately, Mr. Rascon did not have a phone call with either Ms. Chelbian nor Ms. Hildreth and instead spoke with Mr. Gonzalez. Mr. Gonzalez once again said Ha had been spoken to by HR and himself but there was little he could do since Ha would not be terminated.

25. It was clear that not only was upper management not taking the racial animosity, slurs, and verbal assaults seriously, but human resources failed to properly investigate and improperly suspended Mr. Rascon without pay. Further, by failing to act, Thomson created a hostile work environment which rose to the level of constructive termination.

**C. Mr. Rascon's Wages Were Withheld in Retaliation for his Complaints.**

26. On July 1, 2022, Mr. Rascon reached out to Human Resources to inquire about why he only received about three (3) hours of pay in his final paycheck. In response, Ms. Hildreth stated that Mr. Rascon had been a no call/no show multiple times and his pay was for the pay period of June 13, 2022 through June 26, 2022 and only accounted for paid time off owed to him. She further noted Mr. Rascon first spoke to Ms. Chelbian a week after the last incident with Ha. While true, Mr. Rascon only reached out after it became apparent Mr. Gonzalez, the operations manager, continuously failed to address the situation. HR cannot penalize Mr. Rascon since he kept his supervisor informed at all times. Mr. Gonzalez corrected HR's allegations and explained he had been placed on leave at the direction of Mr. Gonzalez and Ms. Chelbian.

27. To date, Mr. Rascon is still owed wages for the pay period of May 30, 2022, through June 12, 2022, during which he worked his regular schedule including overtime. Mr. Rascon worked over 80 hours during the pay period and yet was not paid. Mr. Rascon's unpaid wages are as follows:

| Date: | Hours worked: | Amount Owed: |
|---|---|---|
| May 30, 2022 – June 5, 2022 | Mon.- Fri. 10 hours/day<br>Sat. 6 hours/day<br><br>40 hours Regular Time<br>16 hours Over Time | $3,072.00 |
| June 6, 2022 – June 12, 2022 | Mon.- Wed. 10 hours/day<br>Thursday 8 hours<br><br>32 hours Regular Time | $1,968.00 |

| | 6 hours Over Time | |
|---|---|---|
| Waiting Time Penalties | Daily Rate= 10 hours =$528.00<br>$528.00 x 30 days =$15,840.00 | $15,840.00 |
| **TOTAL** | | **$20,880.00** |

28. Further, Mr. Rascon was never issued any paystubs or given proper access to login his hours worked. Since he joined Thomson Linear, Mr. Rascon has faced issues with his pay. For instance, at the onset of being hired, Mr. Rascon was not given the proper onboarding documentation including his W-4. As a married individual with three (3) children, he intended to provide information for his dependents and have the proper deductions from his pay. Due to Thomson's poor onboarding practices, Mr. Rascon had to wait several pay periods to finally be given the proper documentation. Additionally, Mr. Rascon was unable to properly record his hours worked and instead Mr. Gonzalez would manually input the hours worked. Mr. Rascon regularly asked Mr. Gonzalez for the necessary credentials so he could ensure his hours were being properly recorded but Mr. Gonzalez never provided them. Consequently, Mr. Rascon was also never able to verify or view his paystubs through the clocking system. This is in clear violation of California Labor Code which requires employers to provide fully itemized wage statements and to maintain proper timekeeping records.

| Initial violation | $50.00 |
|---|---|
| 4 additional violations | $400.00 |
| **Total** | **$450.00** |

**D. Thomson Linear has Failed to Provide Mr. Rascon's Complete Personnel File.**

29. Since his constructive termination, Counsel for Plaintiff has repeatedly requested Mr. Rascon's personnel file at least five (5) different times. On August 28, 2022, a letter of representation was mailed out informing Thomson's agent for service of process that Mr. Rascon had obtained counsel and requesting his personnel file on his behalf. On August 31, 2022, Plaintiff's counsel were sent a rejection of service of process. A subsequent letter of representation was mailed out to Scott Benigni, CEO, Todd Patriacca, Glenn Deegan, Bradly Lodge, and the Registered Agent for Service of Process. After not receiving any form of response, Plaintiff's counsel emailed the letter of representation to Ms. Hildreth, and to Nicole Chelbian on November 17, 2022 and December 8, 2022. On December 13, 2022, Defendant's counsel reached out and provided Mr. Rascon's personnel file. However, upon inspection, it failed to include the specifically requested information delineated within the December 8th request. Once again on December 15, 2022, Plaintiff's counsel requested

Defendants immediately send copies of Mr. Rascon's paystubs/payroll records and any communications he had with Human Resources, Lorenzo Gonzalez, Operations Manager, Robert, Operations Manager, and Jennifer, Safety Manager, and any other communications detailing his complaints against Quang Ha and any racially derogatory images he reported. On January 18, 2023, over a month later, Defendant's provided Mr. Rascon's payroll records and failed to include the specifically requested communications and complaints. This is in violation of Labor Code §§ 1198.5, 2265 (b)(c) and subjects Defendant's to sanctions and Mr. Rascon's attorney's fees.

## DAMAGES

30. Mr. Rascon has suffered adverse employment actions because of Defendants' wrongful conduct, including but not limited to loss of job, including past and future lost wages and benefits, and being subjected to undeserved investigation and discipline.

31. Plaintiff was wrongfully disciplined, investigated, terminated, and forced to defend against sham investigations and fabricated claims.

32. Plaintiff was subjected to discrimination, harassment, retaliation, and other unlawful adverse employment actions because they reported, complained about, grieved, resisted, and opposed unlawful workplace conduct as alleged above, including but not limited to harassment, discrimination, and retaliation.

33. Plaintiff was further subjected to extreme psychological and emotional abuse, including multiple acts of harassment, discrimination, and retaliation, commenced out of spite and ill will, and magnified by false and pretextual allegations. Plaintiffs' pain, suffering, and emotional distress are significant, debilitating, and ongoing.

34. Defendants' conduct has been devastating to Plaintiffs' physical, emotional, and mental health. They have lost past and future compensation, including but not limited to benefits and salary, and suffered injuries to their professional and personal reputation.

35. Plaintiff further had to retain attorneys and incur fees and costs in vindication of their damages and rights. Plaintiffs' injuries continue to accrue.

36. Plaintiffs' damages, exclusive of interest, fees, and costs, exceed the jurisdictional minimum of this court.

## FIRST CAUSE OF ACTION
### Race Discrimination in Violation of California Government Code § 12940

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint as though fully set forth herein.

37. At all relevant times, the Fair Employment and Housing Act enacted in California, Government Code § 12940 *et seq.*, and its implementing regulations, were in full force and effect.

38. At all times mentioned herein, Defendants were employers within the meaning of the California Fair Employment and Housing Act (Cal. Govt. Code §§ 12940 *et seq.*) ("FEHA") and Plaintiffs were employees within the meaning of FEHA. This cause of action is brought pursuant to FEHA, and the corresponding regulations promulgated by the California Department of Fair Employment and Housing. Defendants regularly and systematically do business in the State of California and are subject to suit under FEHA in that Defendants regularly employed five or more persons.

39. Under California Government Code § 12940(a) it is unlawful for an employer to discriminate against an employee because of that employee's race.

40. Defendants unlawfully discriminated against Plaintiff based on his race as alleged above, including but not limited to subjecting them to racial slurs, failing to take action when notified that such racial slurs were used in the workplace, in addition to suspension and constructive termination of employment, and other unlawful actions. Defendants thereby forced Plaintiffs to work in a hostile work environment whereby disparate treatment of Hispanic/Latino employees, including by supervisors and coworkers, went undisciplined, uncorrected, and unremedied.

41. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages including, but not limited to, loss of income and benefits, emotional distress, and other general damages.

42. Plaintiff is informed and believes and, based thereon allege that all Defendants, including the Defendants named as Does 1 through 25, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged in this Cause of Action.

43. By discriminating against and harassing Plaintiff in violation of Government Code section 12940, Defendants acted willfully, oppressively, maliciously, and with conscious disregard for Plaintiffs' rights, and with the intent to annoy, harass or injure Plaintiff, in violation of California Civil Code section 3294, such that Plaintiff is entitled to recovery of punitive damages in an amount according to proof at trial.

44. Upon information and belief, one or more of Defendants' managing agents committed, authorized, or ratified the wrongful conduct. As such, punitive damages are warranted against Defendants.

45. Plaintiff further seeks his attorneys' fees and costs pursuant to California Government Code section 12965(b).

**WHEREFORE,** Plaintiff prays for relief set forth below.

## SECOND CAUSE OF ACTION
### Failure to Take Steps to Prevent Discrimination and Retaliation in Violation of California Government Code § 12940(k)

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint as though fully set forth herein.

46. At all times mentioned, herein, California Government Code §12940 *et seq.* was in full force and effect and was binding upon Defendants and each of their employees.

47. Under California Government Code § 12940(a), (k) it is unlawful for any employer or covered entity to failed to take all reasonable steps necessary to prevent discrimination from occurring.

48. Defendants failed to take all reasonable steps necessary to prevent discrimination on the basis of race. Among other things, Defendants failed to ensure that their employees were not violating the Fair Employment and Housing Act by actively treating other employees differently based on their race.

49. Mr. Rascon, and other Latino employees were not treated equally as their non-Latino counterparts, as alleged above.

50. Plaintiff complained about the harassment and discrimination to his managers. Nonetheless, Defendants did not investigate Plaintiffs' complaints or take action to stop the harassment and discrimination.

51. Despite Defendants' knowledge of Plaintiff's complaints, Defendants failed to take immediate and appropriate corrective action to prevent discrimination, retaliation, and harassment. Defendants similarly failed to take all reasonable steps to prevent discrimination from occurring.

52. Further, on information and belief, Defendants do not provide adequate anti-discrimination training to their workforce, which results in unlawful discrimination, unlawful harassment, unlawful retaliation, and related violations against Plaintiff.

53. Because of Defendants' failure to prevent and investigate harassment and discrimination, Plaintiff suffered adverse employment actions, including but not limited to suspension and constructive termination of employment.

54. As a direct and proximate result of Defendants' wrongful conduct, Mr. Rascon suffered damages as alleged above including, but not limited to, loss of income and benefits, emotional distress, and other general damages.

55. Plaintiff is informed and believes and, based thereon alleges that all Defendants, including the Defendants named as Does 1 through 25, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged in this Cause of Action.

56. As a proximate result of the wrongful acts of Defendant, Mr. Rascon has been forced to hire attorneys to prosecute his claims and have incurred and are expected to continue to incur attorney fees and costs in connection therewith. Mr. Rascon is entitled to recover attorney fees and costs under California Government Code § 12965(b).

57. Defendants' acts alleged herein are malicious, oppressive, despicable, and in conscious disregard of Plaintiff's rights. Upon information and belief, one or more of Defendants' managing agents committed, authorized, or ratified the wrongful conduct. As such, punitive damages are warranted against Defendants.

**WHEREFORE,** Plaintiff prays for relief set forth below.

## THIRD CAUSE OF ACTION
### Retaliation in Violation of California Government Code § 12940(h)

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint as though fully set forth herein.

58. At all times mentioned herein, California Government Code §12940 et seq. was in full force and effect and was binding upon each Defendant and each of its employees.

59. Further, under California law, there is a fundamental and well-established public policy against discrimination, harassment, or retaliation based on the fact that the employee has a protected characteristic or engaged in a protected activity. Said public policy is embodied in the Constitution of the State of California and California Labor Code section 232.5 [due to disclosure of working conditions] and other sections of the Labor Code. Adverse employment actions taken by an employer motivated by the fact that an employee has a protected characteristic are contrary to said public policy and are thus actionable under the common law of this state.

60. California Labor Code section 232.5 provides, "No employer may do any of the following: (a) Require, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions. (b) Require an employee to sign a waiver or other document that purports to deny the employee the right to disclose information about the employer's working conditions. (c) Discharge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions. (d) This section is not intended to permit an employee to disclose proprietary information, trade secret information, or information that is otherwise subject to a legal privilege without the consent of his or her employer."

61. California Labor Code section 1102.5(b) provides: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information…to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance…if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." Under California law, discharge of

an employee perceived to have reported an alleged violation of a statute or regulation violates public policy, even if the employee did not actually make the report. Perceived whistleblowers are also protected from retaliatory discharge as are employees who report suspected violations to other employees. *Diego v. Pilgrim United Church of Christ*, 231 Cal. App. 4th 913 (2014).

62. Defendants retaliated against Mr. Rascon based upon his engagement in protected activity, as alleged above, and ultimately terminated Plaintiff's employment.

63. Defendants are directly liable for the discriminatory concur of their manger, directors, supervisors, and other employees and/or agents.

64. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages as alleged above including, but not limited to, a loss of income and benefits, and has further suffered emotional distress, and other general and special damages.

65. The acts of each Defendant described herein were malicious, oppressive, fraudulent, despicable and with an improper and evil motive amounting to malice in conscious disregard of plaintiffs' rights, entitling Plaintiff to an award of punitive damages against Defendant.

66. As a proximate result of the wrongful acts of Defendant, Plaintiff has been forced to hire attorneys to prosecute their claims herniate and has incurred and is expected to continue to incur attorney fees and costs in connection therewith. Plaintiff is entitled to recover attorney fees and costs under California Government Code § 12965(b).

67. Plaintiff is informed and believes and based thereon alleges that all Defendants, including the Defendants named as Does 1 through 25, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged in this Cause of Action.

68. Defendants, through their officers, managing agents, and/or their supervisors, authorized, condoned and/or ratified the unlawful conduct described herein above. By reason thereof, Plaintiffs are entitled to an award of punitive damages in an amount according to proof at the time of trial, as well as attorneys' fees and costs, pursuant to statute.

**WHEREFORE,** Plaintiff prays for relief set forth below.

/ / /

/ / /

## FOURTH CAUSE OF ACTION
### Wrongful Termination in Violation of Public Policy

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint as though fully set forth herein.

69. At all times mentioned herein, the public policy of the State of California, as codified and expressed in Cal/OSHA, the California Labor Code and/or FEHA, employers are prohibited from harassing, discriminating against, and retaliating against any employee on the basis of affiliation with a protected class and/or on the basis of protected conduct.

70. Jurisdiction is further invoked in this court pursuant to the public policy and common law of the State of California, pursuant to *Tameny v. Atlantic Richfield Company,* 27 Cal. 3d 167 (1980).

71. Defendants terminated Plaintiff's employment based upon Plaintiff having a protected characteristic and/or engaging in a protected activity, as alleged herein.

72. Accordingly, the actions of Defendants in discharging Plaintiffs were wrongful and in contravention of the express public policy of the State of California in Cal/OSHA, the California Labor Code and/or FEHA, and implementing laws and regulations promulgated thereunder.

73. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages as alleged above including, but not limited to, loss of income and benefits, emotional distress, and other general damages.

74. As a proximate result of the wrongful acts of Defendants, Plaintiff has been forced to hire attorneys to prosecute his claims herein and have incurred and are expected to continue to incur attorney fees and costs in connection therewith. Plaintiffs are entitled to recover attorney fees and costs under California Government Code § 12965(b).

75. Defendants' conduct was malicious, oppressive, fraudulent, despicable and with an improper and evil motive amounting to malice in conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages against Defendant.

76. Defendants, through their officers, managing agents, and/or their supervisors, authorized, condoned and/or ratified the unlawful conduct described herein above. By reason thereof,

Plaintiffs is entitled to an award of punitive damages in an amount according to proof at the time of trial, as well as attorneys' fees and costs, pursuant to statute.

**WHEREFORE,** Plaintiff prays for relief set forth below.

### FIFTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**

Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

77. The conduct complained of hereinabove was outside the conduct expected to exist in the workplace, was intentional and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress. Defendants' conduct was done with the knowledge that Plaintiff's emotional and physical distress would thereby increase and was done with a wanton and reckless disregard of the consequences to Plaintiff.

78. As a proximate result of Defendants' intentional infliction of emotional distress as hereinabove alleged, Plaintiff has been harmed in that Plaintiff has suffered humiliation, mental anguish, and emotional and physical distress, and have been injured in mind and health. As a result of said distress and consequent harm, Plaintiff has suffered such damages in an amount in accordance with proof at time of trial.

79. Defendants, and each of them, engaging in the conduct as hereinabove alleged, acted oppressively and with reckless disregard of Plaintiffs' rights and safety, and thereby entitling Plaintiffs to an award of punitive damages.

80. Defendants, and each of them, authorized, ratified, knew of the wrongful conduct complained of herein, but failed to take immediate and appropriate corrective action to remedy the situation and thereby acted oppressively and with reckless disregard of Plaintiff's rights and safety, and thereby entitling Plaintiffs to an award of punitive damages.

81. Plaintiff is informed and believes and, based thereon allege that the fictitious Defendants named as Does1 through 25, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged in this Cause of Action.

82. As a direct and proximate result of Defendants' conduct, Plaintiff sustained damages, including but not limited to, loss of earnings and earning potential, opportunities and other benefits of employment and employment opportunities and harm to their reputation, mental anguish, embarrassment, humiliation, and other emotional distress and/or medical and related expenses in an amount to be established at trial. As a result of this wrongful conduct, Plaintiff is entitled to attorneys' fees, costs, and injunctive relief.

83. Moreover, in that, at all times referenced herein, Defendants intended to cause or acted with reckless disregard of the probability of causing injury to Plaintiff and, because said Defendants were guilty of oppressive, fraudulent, and/or malicious conduct, Plaintiffs are entitled to an award of exemplary or punitive damages in an amount adequate to deter such conduct in the future, in addition to attorneys' fees and costs.

84. Defendants' acts alleged herein are malicious, oppressive, despicable, and in conscious disregard of Plaintiff's rights. Upon information and belief, one or more of Defendants' managing agents committed, authorized, or ratified the wrongful conduct. As such, punitive damages are warranted against Defendants.

**WHEREFORE,** Plaintiffs pray for relief set forth below.

## SIXTH CAUSE OF ACTION
**Failure to Provide Personnel File in Violation of Labor Code § 1198.5**

Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

85. California Labor Code section 1198.5 requires an employer provide the employee a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee. The employer shall make the contents of those personnel records available for inspection to the current or former employee, or his or her representative, at reasonable intervals and at reasonable times, but not later than 30 calendar days from the date the employer receives a written request.

86. On or about August 28, 2022, Plaintiff requested a copy of his personnel file through his present counsel. Since then, Plaintiff's present counsel has repeatedly requested Plaintiff's complete personnel file to no avail.

87. However, as of the date of this filing, Plaintiff has not received a copy of his entire personnel file pursuant to Labor Code § 1198.5.

88. As a result of Defendant's failure to provide Plaintiff with his personnel file within thirty (30) days pursuant to California Labor Code § 1198.5, Plaintiff is entitled to recover civil penalties from Defendant in an amount e2qual to seven hundred and fifty dollars ($750), seek injunctive relief to obtain compliance with this section, and recovery of costs and reasonable attorney fees.

**WHEREFORE,** Plaintiffs pray for relief set forth below.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief against Defendants, and each of them, as follows:

A. For general damages, according to proof, on each cause of action for which such damages are available;

B. For special damages, according to proof, on each cause of action for which such damages are available;

C. For declaratory relief to declare Defendants' conduct to be in violation of Plaintiff's rights;

D. For injunctive relief to enjoin Defendants from engaging in such conduct;

E. For pre-judgment and post-judgment interests according to law;

F. For reasonable attorney's fees incurred in this action on those causes of action for which such fees are recoverable under applicable law;

G. For costs of suit incurred in this action; and

1. For such other and further relief as the court deems just and proper.

/ / /

/ / /

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues and causes of action so triable.

Dated: April 14, 2023                                                          Respectfully submitted,

_____
Lori J. Costanzo
Ruby Palomares
Attorneys for Plaintiff
LUIS RASCON